| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>JELD-WEN HOLDING INC.<br>Serve: CT Corporation<br>160 Mine Lake Court, Suite 200<br>Raleigh, North Carolina 27615,<br><br>MARK A. BECK<br>Serve: 322 Red Barn Trail<br>Matthews, North Carolina 28104,<br><br>L. BROOKS MALLARD<br>Serve: 10420 Scio Church Road<br>Chelsea, Michigan 48118,<br><br>KIRK S. HACHIGIAN<br>Serve: 6 Inwood Oaks Drive<br>Houston, Texas 77024,<br><br>GARY S. MICHEL<br>Serve: 5427 Carmel Park Drive<br>Charlotte, North Carolina 28226,<br><br>MATTHEW ROSS<br>Serve: 2148 Broadway Unit PH5B<br>New York, NY 10023,<br><br>WILLIAM BANHOLZER<br>Serve: 100 Wisconsin Avenue, Apt. 801<br>Madison, Wisconsin 53703,<br><br>MARTHA BYORUM<br>Serve: 1 Beekman Place, Apt. 10A<br>New York, New York 10022-8069, | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

GREGORY MAXWELL
Serve: 27 Nicklaus Way
Boerne, Texas 78006,

ANTHONY MUNK
Serve: 570 Park Avenue, Apt. 12C
New York, New York 10065,

SUZANNE STEFANY
Serve: 38 Baker Hill Drive 2
Hingham, Massachusetts 02043

BRUCE TATEN
Serve: 3716 Jardin Street
Houston, Texas 77005,

RODERICK WENDT
Serve: 2120 Fairmount Street
Klamath Falls, Oregon 97601,

STEVEN WYNNE
Serve: 2575 SW Montgomery Drive
Portland, Oregon 97201, and

PATRICK TOLBERT
Serve: 401 Gatcombe Lane
Bryn Mawr, Pennsylvania 19010,

Defendants.

NOW COMES Plaintiff Travelers Casualty and Surety Company of America ("Travelers") and files this Complaint for Declaratory Judgment, averring as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action seeking declaratory relief under 28 U.S.C. §§ 2201 and 2202. Travelers seeks a determination that there is no coverage under an excess executive and organization liability insurance policy (the "Excess Policy") it issued to Defendant Jeld-Wen Holding, Inc. ("Jeld-Wen") for an underlying securities class action (the "Securities

Class Action"), a stockholder derivative action (the "Derivative Action"), and three books and records demands (the "Books and Records Demands").

2. The Securities Class Action alleges violations of federal securities laws arising out of alleged misrepresentations and omissions made in securities filings and earnings calls relating to Jeld-Wen's violation of federal antitrust laws.

3. A true and correct copy of the Consolidated Class Action Complaint filed in the Securities Class Action is attached as Exhibit A.

4. The antitrust violations were the subject of federal antitrust lawsuits against Jeld-Wen that preceded the Securities Class Action and were noticed by Jeld-Wen under another executive and organization liability policy that preceded the Excess Policy's inception.

5. The Derivative Action is premised upon allegations that are materially identical to those in the Securities Class Action concerning Jeld-Wen's violation of federal antitrust laws.

6. A true and correct copy of the Verified Stockholder Derivative Complaint filed in the Derivative Action is attached as Exhibit B.

7. The Books and Records Demands are likewise premised on the lawsuits brought against Jeld-Wen based on antitrust violations, as well as the Securities Class Action.

8. True and correct copies of the Books and Records Demands are collectively attached as Exhibit C.

9. Under the Excess Policy, all Claims for the same or related facts, circumstances, or situations shall be deemed to be a single Claim first made on the earliest date that notice of any fact, circumstance, or situation was given under any prior directors and officers, management, or similar liability insurance policy.

10. The Excess Policy also excludes coverage for any Claim for, based upon, arising from, or in any way related to any fact, circumstance, or situation that, before inception of the Excess Policy, was the subject of any notice given under another policy.

11. Travelers therefore seeks a declaration that there is no coverage under the Excess Policy for the Securities Class Action, Derivative Action, and Books and Records Demands.

## PARTIES

12. Plaintiff Travelers is an insurance company incorporated under the laws of Connecticut with its principal place of business in Hartford, Connecticut.

13. Defendant Jeld-Wen is a corporation organized and existing under the laws of Delaware with its principal place of business in Charlotte, North Carolina.

14. Defendant Mark A. Beck ("Beck") was Jeld-Wen's President and Chief Executive Officer from November 2015 until February 27, 2018. Defendant Beck is a named defendant in the Securities Class Action. Defendant Beck resides in Matthews, North Carolina.

15. Defendant L. Brooks Mallard ("Mallard") was Jeld-Wen's Executive Vice President and Chief Financial Officer from November 2014 until November 8, 2018. Defendant Mallard is a named defendant in the Securities Class Action. Defendant Mallard resides in Chelsea, Michigan.

16. Defendant Kirk S. Hachigian ("Hachigian") was Jeld-Wen's Interim Chief Executive Officer from February 27, 2018 until June 2018. Defendant Hachigian is a named defendant in the Securities Class Action. Defendant Hachigian resides in Houston, Texas.

17. Defendant Gary S. Michel ("Michel") is Jeld-Wen's current President and Chief Executive Officer, as well as a member of Jeld-Wen's Board of Directors. Defendant Michel is a

named defendant in the Securities Class Action. Defendant Michel resides in Charlotte, North Carolina.

18. Defendant Matthew Ross ("Ross") has served as a Jeld-Wen director since October 2011. Defendant Ross is a named defendant in the Derivative Action. Defendant Ross resides in New York, New York.

19. Defendant William Banholzer ("Banholzer") has served as a Jeld-Wen director since August 2017. Defendant Banholzer is a named defendant in the Derivative Action. Defendant Banholzer resides in Madison, Wisconsin.

20. Defendant Martha Byorum ("Byorum") has served as a Jeld-Wen director since July 2014. Defendant Byorum is a named defendant in the Derivative Action. Defendant Byorum resides in New York, New York.

21. Defendant Gregory Maxwell ("Maxwell") has served as a Jeld-Wen director since February 2017. Defendant Maxwell is a named defendant in the Derivative Action. Defendant Maxwell resides in Boerne, Texas.

22. Defendant Anthony Munk ("Munk") has served as a Jeld-Wen director since October 2011. Defendant Munk is a named defendant in the Derivative Action. Defendant Munk resides in New York, New York.

23. Defendant Suzanne Stefany ("Stefany") has served as a Jeld-Wen director since August 2017. Defendant Stefany is a named defendant in the Derivative Action. Defendant Stefany resides in Hingham, Massachusetts.

24. Defendant Bruce Taten ("Taten") has served as a Jeld-Wen director since April 2014. Defendant Taten is a named defendant in the Derivative Action. Defendant Taten resides in Houston, Texas.

25. Defendant Roderick Wendt ("Wendt") has served as Jeld-Wen's Vice Chairman since January 2014. Defendant Wendt is a named defendant in the Derivative Action. Defendant Wendt resides in Klamath Falls, Oregon.

26. Defendant Steven Wynne ("Wynne") has served as a Jeld-Wen director since March 2012. Defendant Wynne is a named defendant in the Derivative Action. Defendant Wynne resides in Portland, Oregon.

27. Defendant Patrick Tolbert ("Tolbert") was a Jeld-Wen director and is a named defendant in the Derivative Action. Defendant Tolbert resides in Bryn Mawr, Pennsylvania.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this action for declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57.

29. This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because it involves a controversy between citizens of different states and because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. In this regard, Jeld-Wen seeks coverage for the Securities Class Action, which alone seeks damages in excess of $100 million, under the Excess Policy, which has a $10 million Limit of Liability.

30. An actual justiciable controversy between the parties exists within the meaning of 28 U.S.C. § 2201 regarding whether there is coverage for the Securities Class Action, Derivative Action, and Books and Records Demands under the Excess Policy, as more particularly described below.

31. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(c).

## FACTUAL ALLEGATIONS

### The Policies

32. Arch Insurance Company ("Arch") issued to Jeld-Wen Executive and Organization Liability Policy No. DOP9300045-02 for the Policy Period from March 15, 2019 to May 1, 2020 (the "Primary Policy").

33. A true and correct copy of the Primary Policy is attached as Exhibit D.

34. The Primary Policy provides that, "[e]xcept for **Loss** paid as indemnification by [Jeld-Wen]**,** the **Insurer** shall pay **Loss** on behalf of any **Insured Person** resulting from a **Claim** first made against such **Insured Person** during the **Policy Period** or Extended Reporting Period, if applicable." Ex. D, § 1.A.

35. The Primary Policy provides that "the **Insurer** shall pay **Loss** on behalf of [Jeld-Wen] that [Jeld-Wen] is permitted or required to indemnify any **Insured Person** resulting from a **Claim** first made against such **Insured Person** during the Policy Period . . . ." Ex. D, § 1.B.

36. Defendants Beck, Mallard, Hachigian, Michel, Ross, Banholzer, Byorum, Maxwell, Munk, Stefany, Taten, Wendt, Wynne, and Tolbert are Insured Persons, as that term is defined by the Primary Policy.

37. The Primary Policy provides that "the **Insurer** shall pay **Loss** on behalf of [Jeld-Wen] resulting from a **Securities Claim** first made against [Jeld-Wen] during the **Policy Period** . . . ." Ex. D, § 1.C.

38. The Primary Policy's definition of a "Claim" provides that "[a]ll **Claims** . . . for the same **Wrongful Act**, any **Interrelated Wrongful Acts**, or the same or related facts, circumstances, or situations shall be deemed to be a single **Claim** first made on the earliest date that . . . any of such **Claims** was commenced, even if such date is before the **Policy Period** . . . or

notice of any such **Wrongful Act**, **Interrelated Wrongful Act**, or fact, circumstance or situation was given under any prior directors and officers, management, . . . or similar liability insurance policy." Ex. D, § 2.B. It further states: "No coverage is provided for any **Claim** made, or deemed first made, before the **Policy Period**." Ex. D, § 2.B.

39. The Primary Policy defines a "Wrongful Act" to include an "act, error, omission, misstatement, misleading statement, neglect or breach of duty by an **Insured Person** in his or her capacity as such," as well as, "regarding [Jeld-Wen], any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty by [Jeld-Wen]." Ex. D, § 2.KK.

40. The Primary Policy defines "Interrelated Wrongful Acts" to mean "**Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes." Ex. D, § 2.W.

41. The Primary Policy defines a "Securities Claim" to mean, in part, "any **Claim** . . . for violation of any securities laws involving securities issued by [Jeld-Wen], including, without limitation, the Securities Act of 1933, the Securities Exchange Act of 1934, or any similar law." Ex. D, § 2.GG.

42. The Primary Policy also includes Books & Records Costs Coverage, subject to a $250,000 Sublimit of Liability. Ex. D, Endorsement No. 1 ¶ 3.

43. The Primary Policy defines "Books & Records Costs" to mean "reasonable and necessary fees and expenses incurred by [Jeld-Wen] in response to a written demand by or on behalf of any shareholder of [Jeld-Wen] to inspect the books and records of [Jeld-Wen] pursuant to Section 220 of the Delaware General Corporation Law or any similar law." Ex. D, § 2., as amended by Endorsement No. 1 ¶ 2.

8

44. The Primary Policy provides no coverage for "**Loss** . . . in connection with any **Claim** for, based upon, arising from, or in any way related to any fact, circumstance or situation that, before the inception date of this Policy, was the subject of any notice given under any other directors and officers, management, employment practices or similar liability policy." Ex. D, § 6.A.

45. Travelers issued to Jeld-Wen ExecutiveChoice+ Excess Policy No. 107060678 for the Policy Period from March 15, 2019 to May 1, 2020 (the aforementioned "Excess Policy").

46. A true and correct copy of the Excess Policy is attached as Exhibit E.

47. The Excess Policy "follows form" to the Primary Policy and "incorporates by reference, and affords coverage in accordance with and subject to, the insuring clauses, warranties, definitions, terms, conditions, exclusions and other provisions contained in the [Primary] Policy, except as regards the premium, the limit of liability, the policy period, and except as otherwise provided" in the Excess Policy. Ex. E, Insuring Agreement, as amended by endorsement.

48. The Excess Policy has a Limit of Liability of $10,000,000 excess of the Primary Policy's $10,000,000 Limit of Liability and $30,000,000 of other underlying excess insurance limits. Ex. E, Declarations.

### The Antitrust Lawsuits

49. Before the Excess Policy incepted, three federal antitrust lawsuits were brought against Jeld-Wen, each of them alleging violations of federal antitrust laws in connection with Jeld-Wen's 2012 acquisition of an industry competitor, CraftMaster Manufacturing, Inc. ("CMI"), and subsequent alleged coordinated conduct with its sole remaining competitor, Masonite Corporation ("Masonite").

50. In June 2016, Steves & Sons ("Steves") brought the first such antitrust lawsuit, *Steves and Sons, Inc. v. Jeld-Wen, Inc.*, No. 3:16-cv-00545-REP (E.D. Va.), in which Steves alleged that Jeld-Wen's acquisition of CMI violated the Clayton Act and that Jeld-Wen breached a supply agreement for interior molded doorskins (the "Steves Antitrust Lawsuit"). In 2018, a jury verdict in that case found Jeld-Wen liable for violating federal antitrust law and awarded Steves almost $180 million in damages.

51. In 2018, direct and indirect purchasers of Jeld-Wen's products filed two separate class actions against Jeld-Wen and Masonite for antitrust violations under both the Sherman Act and state law: *In Re: Interior Molded Doors Antitrust Litig.*, No. 3:18-cv-00718-JAG (E.D. Va.) (the "Direct Purchaser Antitrust Lawsuit"); and *In Re: Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18-cv-00850-JAG (E.D. Va.) (the "Indirect Purchaser Antitrust Lawsuit").

52. In the Direct Purchaser Antitrust Lawsuit, the operative complaint alleged, among other things, violations of Section 1 of the Sherman Act based on Jeld-Wen and Masonite's "collusive pricing and illegal scheme for 'interior molded doors.'" It specifically alleged that Jeld-Wen's acquisition of CMI "eliminat[ed] the check on competition," and that Jeld-Wen and Masonite jointly sought to "eliminate competition by stopping their longstanding practice of supplying doorskins to smaller interior molded door manufacturers." It further alleged that, after Jeld-Wen acquired CMI, Jeld-Wen "began taking adverse actions against third-party door manufacturers," including "prematurely terminat[ing]" supply agreements, which "undermined the ability of independent manufacturers to compete with [Jeld-Wen and Masonite] in the sale of interior molded doors."

53. Similarly, in the Indirect Purchaser Antitrust Lawsuit, the operative complaint alleged, among other things, violations of federal antitrust laws as a result of Jeld-Wen and

Masonite's alleged conduct that "locked out competition in the market for Interior Molded Doors." It also alleged that Jeld-Wen's acquisition of CMI resulted in a "duopoly whereby [Jeld-Wen and Masonite] . . . controlled virtually the entirety of the Doorskins Market." It further alleged that Jeld-Wen's anticompetitive conduct was alleged and proven in the Steves Antitrust Lawsuit.

54. Unbeknownst to Travelers, on March 13, 2019—three days before the Excess Policy incepted—Jeld-Wen gave Arch written notice of the Direct and Indirect Purchaser Antitrust Lawsuits under another policy issued by Arch (policy no. DOP 9300045-01), which immediately preceded the Primary Policy.

55. Jeld-Wen agreed to settle the Direct and Indirect Purchaser Antitrust Lawsuits for more than $37 million.

**The Securities Class Action**

56. On February 19, 2020, Cambridge Retirement System commenced the aforementioned Securities Class Action by filing a Class Action Complaint against Jeld-Wen and certain of its officers and directors, among other named defendants.

57. On June 22, 2020, court-appointed lead plaintiffs filed a Consolidated Class Action Complaint ("CCAC") against Jeld-Wen, Beck, Mallard, Hachigian, Michel, and other named defendants.

58. The CCAC alleges that it "is a securities fraud class action arising out of Defendants' consistent misrepresentations and omissions intended to mislead the investing public by falsely attributing the source of [Jeld-Wen's] financial success to legitimate and lawful pricing strategies. In reality, however, Defendants were engaged in anticompetitive conduct in violation of federal antitrust laws which was artificially propping up [Jeld-Wen's] sales and was actually the true cause of Jeld-Wen's success." Ex. A, ¶ 1.

59. Specifically, the CCAC alleges that, after Jeld-Wen acquired CMI in 2012, Jeld-Wen and Masonite began imposing uniform price increases on their interior molded doors and door skins until Masonite abruptly stopped selling door skins to other manufacturers, which made Jeld-Wen the market's sole supplier of door skins. Ex. A, ¶¶ 3-5.

60. The CCAC further alleges that the resulting lack of competition allowed Jeld-Wen to take adverse pricing actions against independent door manufacturers with which it had long-term supply agreements. Ex. A, ¶¶ 7-10.

61. The CCAC asserts that, "[a]s a result of Jeld-Wen's anticompetitive conduct, in June 2016, [Steves] filed suit in federal court in the Eastern District of Virginia against Jeld-Wen, Inc., a wholly owned subsidiary of Jeld-Wen, alleging that the Company's acquisition of CMI and subsequent conduct in breaching the supply agreements violated federal antitrust laws." Ex. A, ¶ 14. The CCAC further identified the Direct and Indirect Purchaser Antitrust Lawsuits then pending in the Eastern District of Virginia as also resulting from Jeld-Wen's anticompetitive behavior. Ex. A, ¶ 27.

62. The CCAC further alleges that despite "Defendants' extensive and undisclosed anticompetitive conduct, Defendants represented to investors that [Jeld-Wen] operated in a '*highly competitive business environment*,' and regularly touted the source of Jeld-Wen's financial success as the result of legitimate and lawful business and pricing strategies," Ex. A, ¶ 15 (emphasis in original), and that "despite *knowing* all along that the true source of [Jeld-Wen's] success was its anticompetitive conduct . . . , Defendants continually represented that its success was driven by legitimate and lawful strategies such as '*pricing optimization*,' '*pricing discipline*,' '*strategic pricing*,' and '*favorable pricing*.' Defendants made similar statements about their financial success on at least twenty-one different occasions . . . . Of course, Defendants always

failed to make any mention of [Jeld-Wen's] extensive and significant anticompetitive conduct in connection with these statements," Ex. A, ¶ 16 (emphasis in original).

63. The CCAC alleges that, beginning in 2017 and continuing into 2018, Jeld-Wen's various securities filings, quarterly earnings calls, press releases, and other materials contained false and misleading statements of material fact and omitted material facts necessary to make the statements contained therein not misleading. E.g., Ex. A, ¶¶ ¶102-07, 120, 123-26, 140-41, 142-51. Specifically, the CCAC alleges that, as a result of Jeld-Wen's anticompetitive conduct, "Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Jeld-Wen common stock and operated as a fraud or deceit on Class Period purchasers of Jeld-Wen common stock by failing to disclose and misrepresenting the adverse facts detailed herein," Ex. A, ¶ 243, and that "[b]y concealing from investors the adverse facts detailed herein, Defendants presented a misleading picture of Jeld-Wen's business," Ex. A, ¶ 248.

64. The CCAC purports to assert causes of action for violations of section 10(b) of the Exchange Act and Rule 10b-5, and violations of section 20(a) of the Exchange Act. Ex. A, ¶¶ 313-25.

**The Derivative Action**

65. On February 21, 2021, Jason Aldridge, derivatively on behalf of Jeld-Wen, filed a Verified Stockholder Derivative Complaint (the "Derivative Complaint") against Jeld-Wen, as nominal defendant, and members of Jeld-Wen's Board of Directors and Jeld-Wen's executive officers, including Defendants Beck, Mallard, Michel, Hachigian, Ross, Banholzer, Byorum, Maxwell, Munk, Stefany, Taten, Wendt, Wynne, and Tolbert (identified as the "Individual Defendants" in the Derivative Complaint).

66. The Derivative Complaint alleges that "wrongdoing" "has exposed [Jeld-Wen] to substantial potential liability for *violations of federal securities laws* and the costs associated with defending itself," Ex. B, ¶ 1 (emphasis added), and "seeks to remedy wrongdoing committed by [Jeld-Wen's] directors and officers from January 26, 2017 through the present," Ex. B, ¶ 2.

67. The Derivative Complaint is premised upon allegations that are materially identical to those made in the Steves, Direct Purchaser, and Indirect Purchaser Antitrust Lawsuits, and in the Securities Class Action. Ex. B, ¶¶ 53-69 (alleging facts regarding Jeld-Wen's acquisition of CMI), ¶¶ 70-82 (alleging facts regarding Jeld-Wen's alleged anticompetitive conduct), ¶¶ 83-91 (alleging facts regarding incomplete and misleading disclosures), ¶¶ 122-203 (alleging facts regarding false and misleading statements in securities filings, earnings calls, and press releases).

68. By way of example and not limitation, the Derivative Complaint specifically alleges that the "Individual Defendants breached their duty of loyalty and good faith by utterly failing to implement a reasonable, relevant, meaningful, and well-constituted system of internal controls, especially with respect to disclosure of material information regarding the true source of [Jeld-Wen's] financial success, including *truthfully and timely reporting to the market that its financial success during the Relevant Period was not the result of a superior pricing strategy but was, rather, the result of [Jeld-Wen's] unlawful anticompetitive conduct, which would predictably expose the Company to liability*." Ex. B, ¶ 134 (emphasis added).

69. The Derivative Complaint further alleges that the "Individual Defendants also breached their duty of loyalty and good faith by allowing the Company to cause, or by themselves causing, the Company to make improper statements to the public and the Company's stockholders." Ex. B, ¶ 135.

Case 3:21-cv-00173-MOC-DCK   Document 1   Filed 04/19/21   Page 14 of 20

14

70. The Derivative Complaint sets forth causes of action against the Individual Defendants for violations of section 14(a) of the Exchange Act, violations of section 20(a) of the Exchange Act, breach of fiduciary duties, unjust enrichment, and waste of corporate assets.

**The Books and Records Demands**

71. By letter dated November 3, 2020, Shieta Black, a stockholder of Jeld-Wen, demanded to inspect certain books and records of Jeld-Wen (the "Black Books and Records Demand"). *See* Ex. C.

72. The Black Books and Records Demand states that its purpose it to:

> to investigate potential corporate mismanagement, wrongdoing, and waste by fiduciaries of [Jeld-Wen], including the Board of Directors (the "Board") and executive officers of Jeld-Wen, *in connection with [Jeld-Wen's] anticompetitive pricing and practices regarding the sale of interior molded doors and doorskins. As a result of this anticompetitive behavior, [Jeld-Wen] was found guilty of violating section 7 of the Clayton Act, forced to settle two class actions alleging anticompetitive pricing for direct and indirect purchases of interior molded doors, and is currently the defendant in a consolidated securities class action* in the Eastern District of Virginia.

Ex. C (emphasis added).

73. In addition to summarizing the Steves Antitrust Lawsuit, the Black Books and Records Demand highlights that "Jeld-Wen was the defendant in two other class action lawsuits, one on behalf of indirect purchasers, and one on behalf of direct purchasers of interior molded doors, in the Eastern District of Virginia, who sought damages for overpaying for interior molded doors." Ex. C.

74. By letter dated December 18, 2020, the City of Miami General Employees' & Sanitation Employees' Retirement Trust, a stockholder of Jeld-Wen, demanded to inspect certain books and records of Jeld-Wen (the "Trust Books and Records Demand"). *See* Ex. C.

75. The Trust Books and Records Demand discusses at length the "series of lawsuits against [Jeld-Wen] based on . . . continued violations of antitrust laws":

> *First, in 2016, [Jeld-Wen's] largest doorskins customer, Steves and Sons, brought a lawsuit against [Jeld-Wen] alleging illegal monopoly in violation of the Clayton Act and breach of contract.* In 2018, a jury verdict in that case found [Jeld-Wen] liable for violating federal antitrust law and awarded the plaintiff almost $180 million in damages against the Company. The Court subsequently ordered the divestiture of a manufacturing plant, Towanda, that the Company had acquired in 2012. In April of this year, the Court found that, despite the jury verdict and divestiture order, [Jeld-Wen] has continued to engage in the same anticompetitive practices and issued a preliminary injunction against [Jeld-Wen].
>
> *Second, in 2018, purchasers of [Jeld-Wen] products filed a class action against [Jeld-Wen] and one other company for antitrust violations, under both the Sherman Act and state law.* In 2019, the Court substantially denied [Jeld-Wen's] motion to dismiss. In September of this year, [Jeld-Wen] announced that it has agreed to settle the consumer class action for $28 million to the direct purchasers of its products, and $9.75 million for the in-direct purchasers of its products.
>
> *Third, in 2020, security fraud class actions were filed against [Jeld-Wen] and certain current and former officers and directors, as well as one other entity.* On October 26, 2020, the Court denied the defendants' motion to dismiss, holding that *the Complaint properly alleged that [Jeld-Wen] and its fiduciaries failed to disclose intentionally anticompetitive conduct that violated the federal securities laws*.

Ex. C (emphasis added).

76. By letter dated March 3, 2021, John C. Ward, a stockholder of Jeld-Wen, demanded to inspect certain books and records of Jeld-Wen (the "Ward Books and Records Demand").

77. Like the Black and Trust Books and Records Demands, the Ward Books and Records Demand states the Demand:

> arises from a *long-running anticompetitive scheme* perpetrated by [Jeld-Wen] which: (a) has been found to violate the federal antitrust laws; (b) warranted a jury verdict in a *federal antitrust lawsuit* and

> a $176 million award for the plaintiff; (c) resulted in the presiding judge in the antitrust lawsuit concluding that substantial equitable relief was justified; (d) gave rise to *separate antitrust class action litigation against [Jeld-Wen]*, which resulted in [Jeld-Wen] agreeing to pay $37.75 million as part of a settlement; and (e) most recently, *was the basis for a securities fraud class action* against [Jeld-Wen] which has been sustained in its entirety.

Ex. C (emphasis added).

### Jeld-Wen Seeks Coverage Under The Excess Policy While Withholding Coverage Correspondence Travelers Had Been Seeking For Over A Year

78. Jeld-Wen seeks coverage under the Excess Policy for the Securities Class Action, Derivative Action, and Books and Records Demands.

79. By letter dated March 2, 2020, Travelers supplemented its acknowledgment of receipt of notice of the Securities Class Action and reserved all rights in connection with same.

80. In its March 2 letter, Travelers also requested copies of correspondence Jeld-Wen received from Arch and any other applicable policies addressing coverage under their respective policies. Travelers further requested any other information about the matter that Jeld-Wen sent to any underlying or participating insurers.

81. On December 15, 2020, Travelers supplemented its March 2 letter, continued to reserve all rights, reiterated its request for information that Jeld-Wen had forwarded to any underlying or participating insurers, and expressly requested copies of coverage letters regarding "all other potentially applicable insurance on notice of this matter."

82. Travelers acknowledged receipt of the Black and Trust Books and Records Demands and reserved all rights in connection with same on November 24, 2020, and December 22, 2020, respectively.

83. By letter dated February 5, 2021, Travelers acknowledged receipt of the Derivative Complaint filed in the Derivative Action and reserved all rights.

84. By letter dated March 25, 2021, Travelers acknowledged receipt of the Ward Books and Records Demand and continued to reserve all rights in connection with the Books and Records Demands, Derivative Action, and Securities Class Action. Travelers again requested copies of correspondence between Jeld-Wen and other insurers regarding the Antitrust Lawsuits and the Securities Class Action.

85. On April 14, 2021, Jeld-Wen, through its agent, provided copies of the coverage correspondence Travelers had been requesting for over a year since March 2020.

86. Among the correspondence Travelers received was a letter dated March 13, 2019, in which Jeld-Wen gave written notice of the Direct and Indirect Purchaser Antitrust Lawsuits to Arch and other insurers that issued preceding executive and organizational liability policies to Jeld-Wen.

## COUNT I: DECLARATORY RELIEF
### (No Coverage Under the Excess Policy for the Securities Class Action, Derivative Action, and Books and Records Demands)

87. Travelers repleads, realleges, and incorporates by reference the foregoing paragraphs as though fully set forth herein.

88. The Securities Class Action, Derivative Action, and Books and Records Demands for which Jeld-Wen seeks coverage under the Excess Policy arise out of facts, circumstances, and situations that are alleged in the Antitrust Lawsuits, including the Direct and Indirect Purchaser Antitrust Lawsuits that were the subject of Jeld-Wen's March 13, 2019 notice to insurers under executive and organizational liability policies that preceded the Excess Policy.

89. The Primary Policy (to which the Excess Policy follows form) states that all Claims for the same or related facts, circumstances, or situations shall be deemed to be a single Claim first made on the earliest date that notice of any fact, circumstance, or situation was given under any

prior directors and officers, management, or similar liability insurance policy. The Primary Policy further states that: "No coverage is provided for any **Claim** made, or deemed first made, before the **Policy Period**."

90. The Primary Policy also excludes coverage for Loss in connection with any Claim for, based upon, arising from, or in any way related to any fact, circumstance, or situation that, before March 15, 2019, was the subject of any notice given under another policy.

91. Because the Securities Class Action, Derivative Action, and Books and Records Demands arise out of facts, circumstances, and situations that are alleged in the Antitrust Lawsuits, including the Direct and Indirect Purchaser Antitrust Lawsuits, which were noticed on March 13, 2019, before the Excess Policy incepted, the Court should enter a judgment declaring that the Securities Class Action, Derivative Action, and Books and Records Demands are not a Claim first made on or after March 15, 2019, and are not covered under the Excess Policy.

## PRAYER FOR RELIEF

WHEREFORE, Travelers prays that:

a. After due proceedings are conducted, there be a judgment entered in favor of Travelers and against Defendants, declaring that there is no defense or indemnity coverage under the Excess Policy for the Securities Class Action, Derivative Action, and Books and Records Demands, and that Travelers accordingly has no coverage obligations under the Excess Policy in response to the Securities Class Action, Derivative Action, and Books and Records Demands; and

b. All other legal and equitable relief as this Honorable Court deems proper.

**DEMAND FOR JURY TRIAL**

Travelers hereby demands a jury trial on all issues so triable.

Dated: April 19, 2021

SMITH, ANDERSON, BLOUNT,
DORSETT, MITCHELL & JERNIGAN, LLP

/s/ Michael W. Mitchell
Michael W. Mitchell
NC Bar No. 16750
mmitchell@smithlaw.com
Jang H. Jo
NC Bar No. 35686
jjo@smithlaw.com
P.O. Box 2611
Raleigh, North Carolina 27602
Phone: (919) 821-1220
Fax: (919) 821-6800

*Attorneys for Plaintiff Travelers Casualty and Surety Company of America*