UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-173-MOC-DCK

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JELD-WEN HOLDING, INC.; et al., <br><br> Defendants. <br> ———————————————— <br> JELD-WEN HOLDING, INC., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> OLD REPUBLIC INSURANCE COMPANY <br><br> Third-Party Defendant. | **ORDER** |

**THIS MATTER** is before the Court on a Motion to Dismiss for Failure to State a Claim and Failure to Join Necessary Parties, filed by Third-Party Defendant Old Republic Insurance Company ("Old Republic"). (Doc. No. 33). The Court held a hearing on the motion on September 22, 2022. For the following reasons the motion is **DENIED**.

### I. BACKGROUND

**A. Securities Class Action Lawsuit**

1

On February 19, 2020, Jeld-Wen and some of its directors and officers were sued in a securities class action lawsuit (In re: Jeld-Wen Holding, Inc. Securities Litigation, No. 3:20-cv-112-JAG (E.D. Va.)). (Doc. No. 21, ¶¶ 4, 27). The class action alleged that from January 26, 2017, through October 15, 2018, the defendants made misrepresentations and omissions concerning the sources of Jeld-Wen's business success and the competitive marketplace for interior molded doors. (Id. at ¶¶ 4, 38). On April 20, 2021, Jeld-Wen agreed to settle the class action for $39.5 million (the "Securities Settlement"). (Id. at ¶¶ 6, 46). The funds for the settlement were to be (and have now apparently been) paid into an escrow account for distribution. (Id. at ¶ 47).

### i. Directors and Officers Liability Insurance Coverage

To protect itself against securities-related claims and to protect its directors and officers from all manner of claims (including claims for which it must indemnify its directors and officers), Jeld-Wen had purchased directors and officers ("D&O") liability insurance coverage. (Id. at ¶ 16). Jeld-Wen bought a primary insurance policy and purchased underlying excess policies. The primary and excess insurance policies covering the period of March 15, 2018, to March 15, 2019 ("2018–2019 tower") is structured as follows: Arch Insurance Company ("Arch") issued to Jeld-Wen a primary D&O policy; National Fire Union Insurance Company of Pittsburgh, Pa. ("AIG") issued an excess D&O policy providing a 2nd layer of coverage; XL Specialty Insurance Company ("XL") issued excess insurance as a 3rd layer of coverage; and Starr Indemnity and Liability Company ("Starr") issued excess insurance as a 4th layer of coverage. Each insurer provides $10 million in coverage per layer. Finally, in the 2018-2019 tower, Old Republic issued excess insurance as a 5th layer of coverage to Jeld-Wen. Old

Republic's excess policy has limits of $10,000,000 and is excess of $40,000,000 in underlying limits (the "2018-19 Old Republic Policy").

The primary and excess insurance policies covering the period of March 15, 2019, to March 15, 2020 ("2019–2020 tower") is structured the same as the 2018-2019 tower, except that the fifth layer of coverage (i.e., the fourth excess carrier) is Travelers Casualty and Surety Company of America ("Travelers") rather than Old Republic.

### a. Jeld-Wen's Dispute with Travelers

Jeld-Wen sought coverage from its 2019–2020 tower insurers for the Securities Settlement. The four carriers beneath Travelers accepted coverage for the class action and agreed to fund the Securities Settlement, "Travelers, alone, refused to pay." (Id. at ¶ 8). Specifically, the underlying insurers on the 2019–2020 tower have accepted coverage for the class action and have agreed to pay $40 million in defense costs for the Securities Settlement under the 2019–2020 tower. (Id. at ¶¶ 7, 41–42). Jeld-Wen asserts that these payments have exhausted (or will exhaust) the underlying limits for the Travelers policy, so Travelers is obligated to pay $10 million in accordance with the 2019–2020 tower. (Id. at ¶¶ 46, 48–49). Travelers responds that the action was not covered under the 2019–2020 Tower at all, contradicting the coverage positions of the insurers under the primary and excess policies below Travelers. (Id. at ¶ 43–44; see also Doc. No. 1).

Travelers has filed suit for a declaration of no coverage under the 2019–2020 tower, and Jeld-Wen has filed counterclaims against Travelers to confirm coverage under the 2019–2020 tower.

### b. Jeld-Wen's "Alternative" Third-Party Complaint Against Old Republic

3

Jeld-Wen has also added two, third-party counts against Old Republic–for declaratory relief and breach of contract as an "alternative," if the Court concludes that Travelers does not owe coverage under the 2019–2020 tower. (Doc. No. 21, ¶¶ 9, 50, 61–72). In other words, Jeld-Wen contends that the fifth layer of an insurance tower must accept coverage for the class action, and–if this Court determines it is not Travelers from the 2019-2020 tower–then it must be Old Republic from the 2018-2019 tower.

Old Republic now moves to dismiss Jeld-Wen's "alternative" Third-Party Complaint against Old Republic under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than

4

the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### B. Federal Rule of Civil Procedure 12(b)(7)

A complaint may be dismissed pursuant to Rule 12(b)(7) for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Courts are generally reluctant to grant Rule 12(b)(7) motions. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C., Inc., 210 F.3d 246, 250 (4th Cir. 2000) ("Dismissal of a case [for nonjoinder] is a drastic remedy ... which should be employed only sparingly."). The moving defendant bears the burden of showing that a party must be joined for a just adjudication. Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005).

A decision to dismiss for failure to join a party "'must be made pragmatically, in the context of the substance of each case, rather than by procedural formula.'" Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 918 (4th Cir. 1999) (quoting Provident Tradesmen Bank & Trust Co. v. Patterson, 390 U.S. 102, 119 n.16 (1968)). And, "courts must take into account the possible prejudice 'to all parties, including those not before it.'" Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 433 (4th Cir. 2014) (quoting Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 441 (4th Cir. 1999)).

A motion to dismiss under Rule 12(b)(7) for failure to join a required party under Rule 19 entails a two-step analysis. See Clark v. Harrah's NC Casino Co., LLC, No. 1:17CV240, 2018 WL 6118624 (W.D.N.C. Apr. 27, 2018), report and recommendation adopted, No. 1:17-CV-00240-MR-DLH, 2018 WL 4664136 (W.D.N.C. Sept. 28, 2018). First, "the court must determine whether a party is necessary under Rule 19(a) because of its relationship to the matter under consideration." Id. (citing Owens-Illinois, 186 F.3d at 440). If the court finds "the absent

5

party is necessary, it must be ordered into the action so long as the joinder does not destroy the court's jurisdiction." Id. (citing Owens-Illinois, 186 F.3d at 440). Under the second step, "when a party cannot be joined because it would destroy the court's jurisdiction, the court must decide whether the action can continue without the party, or whether the party is indispensable under Rule 19(b) and the action must be dismissed." Id.

### III. DISCUSSION

Old Republic makes three arguments for dismissing Jeld-Wen's Third-Party Complaint. First, Old Republic asserts that the underlying limits on the 2018-2019 tower policy have not yet been exhausted and therefore Old Republic's coverage obligations have not been triggered. According to Old Republic, the 2019–2020 tower's policies are paying the defense costs and settlement; so the policies below Travelers on the 2019–2020 Tower have been exhausted; and Travelers is now up to bat. But, Old Republic, on the other hand, is an excess insurer for a different policy period–the 2018-2019 tower–and Old Republic declares that their obligation cannot be triggered as a result of payments under another policy. As a result, Old Republic contends that their policy obligation has not been triggered and Jeld-Wen's Third-Party Complaint must fail.

Second, Old Republic argues that the Third-Party Complaint should be dismissed because the 1st, 2nd, 3rd, and 4th layer insurers to the 2018-2019 tower are necessary parties under Federal Rule of Procedure 19 and Jeld-Wen failed to join them. Old Republic argues the 2018-2019 underlying insurers are necessary parties because the Court cannot accord complete relief without joining them and the underlying insurers of the 2018-2019 tower have an interest in the subject matter of the Third-Party Complaint that may be impaired or impeded if Jeld-Wen prevails.

6

Third, Old Republic asserts that Jeld-Wen's breach of contract cause of action against Old Republic should be dismissed with prejudice, because Old Republic's obligations under its policy have not attached and therefore it is not possible to have breached its obligations.

However, because the underlying limits on the 2018-2019 tower policy have been exhausted, the underlying insurers are not necessary parties, and Old Republic's policy attached when the underlying limits were exhausted, this Court denies Old Republic's motion to dismiss.

### A. Old Republic's Underlying Limits Have Been Exhausted According to the Insuring Agreement's Text

Old Republic's first argument is that Jeld-Wen's Third-Party Complaint fails to state a claim because the complaint does not establish that Old Republic's underlying limits have been exhausted. The underlying limits of an excess policy "must always be exhausted before coverage under the excess policy is triggered." Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 334 (4th Cir. 2008) (emphasis in original). In North Carolina, courts "look to the language of the applicable insurance policies to decide" whether underlying limits have been exhausted and an excess policy has been triggered. Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 305, 524 S.E.2d 558, 566 (2000).

The Old Republic Policy's Insuring Agreement provides that: "Liability shall attach to the Insurer [Old Republic] only after the insurers of the Underlying Policies, the Insureds, any excess "difference-in-conditions" insurer or any other source pay in legal currency loss covered under the Underlying Policies equal to the full amount of the Underlying Limit." (Doc. No. 21-2 at 5–6) (Policy Sections I, III) (emphasis added). The key language here is "any other source" and "loss covered under the Underlying Policies."

7

Jeld-Wen asserts there is an actionable claim because the Old Republic policy's underlying $40 million limit has been paid under the policies on the 2019-2020 tower. According to Jen-Weld, the payment from the 2019-2020 insurers qualifies as "any source," and, since those sources have paid the loss covered by the underlying policies, Old Republic's excess policy obligation is thereby triggered.

Alternatively, Old Republic claims their obligation is not triggered because payment from one policy cannot be treated as payment under another. Old Republic reasons that the "loss covered under the Underlying Policies" means that payments under the 2019-2020 tower cannot be treated as payments by the same insurers under the 2018-2019 tower. Instead, the loss must be processed and paid under the underlying 2018-2019 policy. The 2019-2020 tower policies are different from the 2018–2019 tower policies, and therefore are not part of the Old Republic Policy's defined list of Underlying Policies. Consequently, payments under the 2019–2020 policy do not exhaust the underlying limits of the 2018–2019 Old Republic policy, and do not trigger Old Republic's policy obligation.

This Court finds the language of the insuring agreement to be ambiguous. Although Old Republic insists that the agreement does not allow payment under one policy to be treated as payment under another, a reasonable reading of the agreement is that it is not the underlying policies which must be paid, but the <u>loss</u> they cover, and that loss can be covered by <u>any source</u>. First, the agreement's language "loss covered under the Underlying Policies" does not clearly articulate performance of the underlying policies as a prerequisite to exhaustion. Coverage of loss sensibly concerns the risks within the scope of an insurance policy, not a mandate as to how an insurer should act in respect to its coverage obligations. <u>See</u>, <u>e.g.</u>, COVERAGE, Black's Law Dictionary (11th ed. 2019) (defining coverage as "[i]nclusion of a risk under an insurance policy;

the risks within the scope of an insurance policy"); Deere & Co. v. Allstate Ins. Co., 32 Cal. App. 5th 499, 520, 244 Cal. Rptr. 3d 100, 116 (2019) (citation omitted) ("In the context of an insurance policy, coverage means 'inclusion within the scope of an insurance policy,' not 'the act or fact of covering.' Thus 'coverage' has nothing to do with how, in reality, the insurer acts with respect to its coverage obligations."). Second, the language allowing payment by "any other source" reasonably implies an intent to separate the payment necessary to trigger Old Republic's obligation from the determination of coverage under the underlying policies. This kind of contract drafting makes sense, because it ensures that a quarrel with an underlying insurer, or an underlying insurer's insolvency, would not prevent Jeld-Wen from collecting excess coverage. If Old Republic wanted to guarantee that payment was processed and paid under a certain policy, it should have explicitly narrowed the permissible payment sources.

Because Jeld-Wen's interpretation is at least reasonable, the agreement is ambiguous. Under North Carolina law, ambiguous policy language is construed in favor of the insured. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). Moreover, North Carolina law dictates that insuring agreements should be construed liberally to extend coverage whenever possible. State Capital Ins. Co. v. Nationwide Mut. Ins. Co., 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986). In light of the North Carolina rules of insuring agreement interpretation, this Court finds that Old Republic's underlying limits have been exhausted, and Jeld-Wen states a claim upon which relief can be granted.

### B. The Underlying Insurers are Not Necessary Parties

Old Republic's second argument is that the case should be dismissed because the 1st, 2nd, 3rd, and 4th layer insurers to the 2018-2019 tower are necessary parties under Federal Rule of Civil Procedure 19 and Jeld-Wen failed to join them. When adjudicating a motion under Rule 19,

9

a court asks first whether the non-joined parties are necessary under Rule 19(a) and then whether the parties are indispensable under Rule 19(b). See Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc., 210 F.3d 246, 249 (4th Cir. 2000). If a Court finds an "absent party is necessary" and indispensable then the party must either be joined or the case must be dismissed. Philips Med. Sys., Nederland B.V. v. TEC Holdings, Inc., No. 3:19-cv-373-MOC-DCK, 2020 WL 3511601, at *3 (W.D.N.C. June 29, 2020).

An absent party is necessary under Rule 19(a) in two situations: First, if the court cannot accord complete relief among existing parties without the absent party; Second, if the absent party claims an interest relating to the subject of the action and disposing of the action without the absent party may impair or impede the absent party's ability to protect their interest, or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest. Hanna, 750 F.3d at 433–34.

Old Republic asserts that both situations are present here. First, Old Republic says the Court cannot accord complete relief without the 2018-2019 underlying insurers, if Jeld-Wen prevails. According to Old Republic, their obligation is not triggered without exhaustion of the underlying policies in the 2018–2019 tower. Exhaustion of the underlying policies cannot occur without a binding court order on the underlying insurers declaring that payments for the defense and settlement of the class action are owed under the 2018–2019 tower instead of the 2019–2020 tower. And, finally, a binding court order cannot occur without joining the parties.

Second, Old Republic argues the underlying insurers of the 2018-2019 tower have an interest in the subject matter of the Third-Party Complaint that may be impaired or impeded if Jeld-Wen prevails. Specifically Old Republic contends that the absent insurers have a contractual interest and, "[g]enerally, parties to a contract are necessary parties under Rule 19(a) to an action

10

contesting the validity or interpretation of that contract." Soho Wilmington LLC v. Barnhill Contracting Co., No. 7:18-cv-79, 2019 WL 165708, at *4 (E.D.N.C. Jan. 10, 2019). Furthermore, this contractual interest will be impaired if Jeld-Wen prevails, because ruling that Old Republic's obligation has been triggered may impact the underlying insurers' contractual rights under the 2018-2019 policy.

Jeld-Wen, on the other hand, argues that neither of the prerequisites for Rule 19(a) joinder are met. Jeld-Wen reiterates that Old Republic's obligations have been triggered under the insuring agreement. Because exhaustion of the underlying limits can be met without joining the underlying 2018-2019 insurers, the Court can accord complete relief without joining the underlying 2018-2019 insurers. Furthermore, the underlying insurers have no interest in the subject matter that may be impaired or impeded. Under both the 2018-2019 and the 2019-2020 towers, $40 million must be paid as the underlying limit, and that amount has already been paid, which narrows the impact of this dispute to Old Republic. See, e.g., City of Littleton, Colorado v. Commercial Union Assurance Co., 133 F.R.D. 159, 163 n.8 (D. Colo. 1990) (noting that its "opinion should not be construed as bestowing indispensability on absent insurers whenever excess insurance contracts may apply, but must be confined to the precise facts here presented.").

This Court finds that the underlying insurers of the 2018-2019 tower are not necessary parties. As discussed above, exhaustion of the underlying limits for Old Republic's policy does not require exhaustion of the underlying policies in the 2018-2019 tower. Therefore, no binding order from this Court is necessary, and the Court can accord complete relief without the 2018-2019 underlying insurers being joined. Although Old Republic points to cases such as Shell Oil Co. v. Aetna Cas. & Sur. Co., 158 F.R.D. 395, 400 (N.D. Ill. 1994) for the proposition that underlying policies must be exhausted before an excess insurance policy is triggered, we must

look to the language of the applicable insurance policy, and Old Republic's policy did not create such a requirement for exhaustion. See, e.g., Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 158 F.3d 170, 176 (3d Cir. 1998) (finding that the underlying insurer was not a necessary party because, under the applicable insurance policy, the excess insurer's obligation could be triggered by payments from the insured rather than the underlying insurer).

Moreover, the 2018-2019 tower's underlying insurers' interests will not be impaired or impeded if Jeld-Wen prevails. Because the underlying limit was set at a specific number–$40 million–and that number was paid by any source, the liability of the underlying insurers does not need to be decided for the dispute against Old Republic to proceed. And, any resolution to the dispute would not be binding on the underlying insurers under North Carolina's law concerning preclusion. Issue preclusion only applies to a person who was either party to, or in privity with a party to, a prior action. See Soho Wilmington LLC, 2019 WL 165708, at *4. The underlying insurers' absence ensures that they are not a party and because Old Republic and the underlying insurers issued separate policies, creating separate contractual rights and obligations, there is no privity. Hales v. N.C. Ins. Guar. Ass'n, 337 N.C. 329, 333, 445 S.E.2d 590, 594 (1994) (defining privity as for issue preclusion purposes as "a mutual or successive relationship to the same rights of property").

The determination that the underlying insurers are not necessary parties is supported by the fact that the underlying insurers themselves have not attempted to claim an interest in this litigation. McKiver v. Murphy-Brown, LLC, 980 F.3d 937, 951 (4th Cir. 2020) (finding that an absent party was not a necessary party because it "did not seek to join the suit or otherwise claim an interest relating to the subject of an action"). Because this Court finds that the parties are not necessary, there is no need to address indispensability under Rule 19(b).

12

### C. Old Republic's Policy Attached when the Policy's Underlying Limits Were Exhausted

Lastly, Old Republic claims that Jeld-Wen's claim against Old Republic is legally inadequate because Jeld-Wen has no viable breach of contract claim against Old Republic. Old Republic reasons that because its policy's underlying limits have not been exhausted, liability under the policy has not attached, and consequently Old Republic has no duty or obligation that it has failed to perform. However, as explained above, because this Court finds that the underlying limits of Old Republic's policy have indeed been exhausted, liability attaches, and Old Republic does have an obligation. Therefore, Jeld-Wen does have a viable breach of contract claim against Old Republic, and this Court denies Old Republic's motion to dismiss.

### IV. CONCLUSION

Defendant's motion to dismiss is denied for the reasons stated herein.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Motion to Dismiss for Failure to State a Claim and Failure to Join Necessary Parties, filed by Third-Party Defendant Old Republic Insurance Company, (Doc. No. 33), is **DENIED**.

Signed: November 18, 2022

Max O. Cogburn Jr.
United States District Judge

13

Case 3:21-cv-00173-MOC-DCK   Document 103   Filed 11/21/22   Page 13 of 13